Michael B. Newman, Esq. (MN 4124)
Attorney for RCG Information Technology, Inc.
55 Broad Street, 19th Floor
New York, New York 10004
(212) 547-3118

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

RCG INFORMATION TECHNOLOGY, INC.        05 Civ. _____

                        Plaintiffs,      **VERIFIED COMPLAINT**

     - against -

                                       **REQUEST FOR**
STEVEN WIGGINTON and VINCENT RUSSO,    **INJUNCTIVE RELIEF**

                       Defendants.
-------------------------------------------------------------------------X

      Plaintiff RCG Information Technology, Inc. ("RCG IT"), by their attorney

Michael Newman, for their complaint against defendants Steven Wigginton

("Wigginton") and Vincent Russo ("Russo"), allege:

## INTRODUCTION

      1.    RCG IT seeks to enforce a negotiated agreement narrowly drawn

to safeguard valuable confidential information and customer good will in the

possession of two former Account Executives (i.e. salesmen) Wigginton and

Russo, who were paid in excess of $99,787 and $111,994 last year, respectively.

In just the first three months of this year Wigginton and Russo were paid more

than $30,000 each.  Wigginton nevertheless exercised his right to prematurely

terminate his contract and has gone to work for a direct competitor soliciting RCG

IT clients in direct disregard of the unambiguous terms of his contract. Russo was

terminated for cause and has also gone to work for the same direct competitor soliciting RCG IT clients and aiding and abetting in Wigginton's breach in direct disregard of the unambiguous express terms of his contract. In order to enforce its contract rights and protect its confidential, proprietary information, RCG IT seeks a declaratory judgment that the "Unfair Competition" covenant not to compete for one year following Wigginton's termination of his employment and six months following the termination of Russo's employment contained in their employment contracts entered into by RCG IT as of December 5, 2003 ("Wigginton's Employment Contract," attached hereto as Exhibit A) and as of July 24, 2002 ("Russo's Employment Contract", attached hereto as Exhibit B) are valid and enforceable. RCGIT also seeks actual damages for their breach of the covenant, and actual and punitive damages for their breach of fiduciary duty, misappropriation of proprietary information and corporate opportunities, tortuous interference with business relationships and expectancies, and civil conspiracy.

## PARTIES

2.      Wigginton is a resident of the State of New York who is domiciled at 1413 Avalon Square, Glen Cove, New York 11542.  He was employed by RCG IT from December 5, 2003 until March 30, 2005.

3.      Russo is a resident of the State of New York who is domiciled at 43 Westfield Drive, Centerport, New York 11721. He was employed by RCG IT from July, 2002 until March 31, 2005.

4.      RCG Information Technology, Inc. is a New Jersey corporation engaged in the information technology consulting business. Its principal place of

business is located in Edison, New Jersey. It is the signatory to the Employment

Contracts with Wigginton and Russo.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action involving claims in

excess of $75,000 pursuant to 28 U.S.C. § 1332 (Diversity).  Venue is proper in

this district pursuant to 28 U.S.C. § 1391 (a)(2) because a substantial part of the

events giving rise to the claims set forth herein occurred in this judicial district.

6.      Russo's Employment Contract provides for venue in the United

States District Court for the District of New Jersey pursuant to paragraph 6 of

Russo's Employment Contract   (a copy of Russo's Employment Agreement is

annexed hereto as Exhibit B).  However, the agreement gives RCG IT the right

"to bring legal proceedings . . . . against [Russo] in any other court of jurisdiction

in accordance with applicable law."   For the convenience of the parties and in the

interests of judicial economy, RCG IT elects to bring this action in Russo's home

state of New York.

## FACTS

**About RCG IT**

7.     RCG IT is a leader in Information Technology ("IT") professional

services with three decades of experience and best practices providing IT staffing,

assessment, strategy and design, application development, integration and

management.  RCG IT serves more than 360 clients and 43 of the Fortune 100

across a broad range of industries, including financial services, energy/oil & gas,

insurance and pharmaceuticals.

8.     RCG IT's clients include, but are not limited to, Citigroup, Financial Information Services Agency, IBM, JPMorgan Chase, Lord Abbett & Company, Standard & Poors, as well as, ADP Brokerage Services, the American Society of Composers, Authors and Publishers, Ann Taylor, BMG Entertainment, HSBC,  Lifetime Entertainment, Long Island Bus, and New York Life.  In addition to these clients, Russo spent a significant amount of time and RCGIT expense to refresh RCGIT's relationship with Ogilvy & Mather.[1]

**The Contractual Relationship**

9.     To protect its substantial investment, including confidential and proprietary information, and to maintain and develop customer goodwill, RCG IT required Defendants to execute Employment Agreements with RCGIT before they assumed their roles as Account Executives.  Thus, RCG IT and Wigginton entered into the Employment Contract as of December 5, 2003.  There was no stated  employment term as employment was "at will" however the parties did agree that "Employee's employment may be terminated by either Employee or RCG IT, with or without Cause, provided that (i) if the employment is terminated by RCG IT without Cause, RCG IT agrees to give Employee fourteen (14) days' prior written notice or severance pay in lieu of notice, or (ii) Employee agrees to give RCG IT fourteen (14) days' prior written notice if Employee initiates termination of employment." Exhibit A, ¶ 1.

---

[1] Both Lifetime Entertainment Services and Ogilvy & Mather have offices located at 309 West 49th Street, New York, New York.

10.    Russo's Employment Agreement, entered into on or about July 24, 2002, contained a similar clause, however his contract contained no reference to severance.  Exhibit B, ¶ 1.

11.    Under Wigginton's Employment Agreement, Wigginton as the "Employee" agreed that during his employment with RCG IT and "for a period of one (1) year thereafter," he would not:

> directly or indirectly, as principal, agent or trustee, in person or through any company of which [he] is an employee, officer, director, shareholder or partner, solicit any client of RCG IT or individual or entity who acted as an independent contractor to RCG IT with which [he] was conducting business during the twelve months preceding [his] separation of employment with RCG IT.  Moreover, during this time period, [he] will not, directly or indirectly, perform services for any client of RCG IT or any individual or entity that acted as an independent contractor to RCG IT.

Exhibit A, ¶ 4.   Russo's Employment contained a similar provision, however his contract contained a six month limitation.  Exhibit B, ¶ 4.

12.    RCG IT relies heavily on confidential, proprietary and trade secret information to develop and support the individual customer relationships that are the backbone of its business. RCG IT expends significant resources fostering these relationships, which inure to the benefit of RCG IT through individual sales representatives. Indeed, the paramount responsibility of individual RCG IT sales representatives, like Wigginton and Russo, is to use the company's confidential information to foster and maintain customer relationships (for which they are fully reimbursed, as well as being well compensated and incentivized, by RCG IT).  In order to protect these invaluable confidential, proprietary and trade secrets and customer relationships, RCG IT sought an agreement from Wigginton and

Russo to refrain from engaging in any competitive activities for a limited time (one year and six months, respectively) and in a limited scope (those New York clients with which each was conducting business within the last twelve months of their employ with RCG IT) after the termination of their employment with RCG IT.  This limited period was to afford RCG IT an opportunity to maintain the customer relationships that it has financially supported before Wigginton and Russo are able to use RCG IT's confidential, proprietary and trade secret information and RCG IT-supported relationships to usurp such RCG IT-supported good will for the benefit of a competing information technology consulting and staffing firm, NetPixel, Inc. ("NetPixel").  This limited scope was crafted to cover all IT business the Wigginton and Russo were conducting in their region, New York, including the Citigroup business that constituted over 53% of the 2005 commission sales that Wigginton received from RCG IT.

13.     The importance of this concern is reflected in the recitals found at the very outset of the Unfair Competition clause which includes the covenant not to compete, stating, in relevant part:

> As a condition of employment with RCG IT, and as … a
> *material inducement* to RCG IT to employ Employee
> hereunder …. Employee agrees that ….

Exhibits A & B, ¶4 , emphasis supplied.  Wigginton's Employment Agreement also contained the added consideration that the non-compete restrictions were also a material inducement for RCG IT to share Confidential Information.  Exhibit A, ¶ 4.

14.     In consideration for these post-employment restrictions, among other things, Wigginton and Russo were among the highest paid commission salesman of RCG IT.  Wigginton was guaranteed a minimum annual base salary of at least $80,000.  He was also entitled to commissions.   Russo's guaranteed base salary was at least $70,000 and he was entitled to commissions as well. Wigginton's total compensation in 2004 was nearly $100,000 , thus making his base salary one of the highest of any commission salesperson with less than six years of employment with RCGIT.  Russo's high base salary tracked closely behind that of Wigginton.

15.     Wigginton and Russo's total compensation in the first three months of 2005 was nearly $30,000 each.

16.     In addition to his compensation, Wigginton and Russo received from RCG IT expense reimbursements which included fully paid dinners and outings, as well as tickets to all of New York's professional sporting events including RCG IT's box seats at Yankee Stadium.

17.     Wigginton also commanded his own private fiefdom within RCG IT, comprised of dedicated recruiting services and a dedicated assistant.  No other New York area RCG IT representative enjoyed that level of exclusive staff support.

18.     RCG IT afforded Wigginton and Russo the opportunity to compete in its "RCG IT Club 2005 Incentive Program" which was developed by RCG IT to reward outstanding performance by Account Executives.

19.     Under their respective employment contracts, Wigginton and Russo acknowledged that their breach of any provision thereof, including the post-employment competition provision, would cause irreparable injury to RCG IT, acknowledged that money damages would not be a sufficient or complete remedy for any such breach, and consented to the entry of injunctive relief in order to terminate or prevent such a breach. Exhibits A & B, ¶ 4.

**Wigginton and Russo's Employment History With RCG IT**

20.     Wigginton joined RCG IT on or about December 5, 2003 as an Account Executive.  Although he had touted himself as "driving new business through key accounts" he floundered at RCG IT in his early months, up through late summer 2004.

21.     It was not until RCG IT introduced Wigginton into the Citigroup account  on or about September 2004 that he slowly gained momentum while being supported by RCG IT.  Russo on the other hand started at RCGIT, in late July 2002, full of promise with an early capture of a new client, Lord Abbett but later began to flounder.

22.     Wigginton and Russo were placed in positions by RCG IT where they developed a relationship with each of their clients such that RCG IT could maintain a presence in the client's operations and so that RCG IT could obtain additional business from these clients. Wigginton was the primary contact for Citigroup and Russo was RCG IT's primary contacts for Lord Abbett, Lifetime Entertainment, and Ogilvy & Mather, among others.  These clients and prospective clients are and were very important to RCG IT and RCG IT

designated Wigginton and Russo as the key contact people for them. Citigroup, for instance, became a critically important client to RCG IT in New York, currently generating over $350,000 in monthly revenue.  Additionally, RCG IT's significant incremental growth forecast has faded to nothing.

**Wiggington and Russo's Confidentiality Obligation**
**and their Access to Proprietary Information**

23.    A "Non-Disclosure" clause was incorporated into both defendants' Employment Agreement in which they both respectively agreed to respect the confidential and proprietary nature of all of RCG IT's non-public information. See Exhibits A and B, ¶ 3.

24.    During the course of their employment with RCG IT, Wigginton and Russo had access to a great deal of RCG IT's confidential, proprietary and trade secret information including, but not limited to (a) the transactions in which RCG IT's clients are engaged or are considering engaging; (b) RCG IT's services and its pricing of those services; (c) the individual staffing services purchased by or for RCG IT's clients, including Citigroup; (d) upon information and belief, the identity of third-party contractors from which RCG IT obtains resources for its clients, and the terms and conditions on which RCG IT transacts business with those suppliers; (e) the types of solutions services RCG IT provides and RCG IT's internal corporate policies related to those services; (f) the individual specifications or characteristics of the solutions or staffing services ordered by RCG IT's clients; (g) RCG IT's business, marketing and pricing strategies; (h) the names and telephone numbers of existing, new or potential RCG IT clients; (i) information concerning RCG IT's financial condition, profit margins, and

performance and the compensation paid to its employees and third-party contractors, and (j) training and operations material and memoranda. The foregoing information is closely held by RCG IT, is not publicly available to or capable of being acquired or duplicated by persons outside of RCG IT and would be invaluable to those in competition with RCG IT.

25.     As RCG IT employees, Wigginton and Russo attended weekly sales meetings, regular business strategy sessions, and an annual sales "Kick-Off" at which confidential, proprietary and trade secret information of this type was discussed.  The Kick-Off, held in mid-February 2005 was particularly important because RCG IT's short term and long term go-forward strategies were discussed in detail.  RCG IT suspects that Wigginton and Russo attended the kick-off during the period that they were contemplating jumping to a competitor.  Wigginton and Russo also occasionally received sales reports and business strategy plans in which this confidential information was compiled and analyzed. The information thus provided related not just to RCG IT customers Wigginton and Russo serviced, but also to clients with whom they never personally had any dealings. Russo and Wigginton acknowledged that their access to such information via the execution of their Employment Agreements which specifically provided for the protection of such information.

**Wigginton and Russo's Separation from RCG IT**

26.     On March 30, 2005 Wigginton notified Jon Deutsch, RCG IT's New York Area Regional Manager, of his intent to voluntarily terminate his employment effective April 15, 2005.

27.     On or about March 31, 2005, Jon Deutsch, RCG IT's New York Area Regional Manager, terminated Russo's employment with RCG IT.

**Wigginton's Breach of The Non-Solicitation Clause**

28.     The day after Wigginton departed, on or about April 1, 2005 Wigginton's new employer, Tajuddin Haslani the Chief Executive Officer of Netpixel Inc. ("Netpixel"), a New Jersey corporation located at 42 Utica Rd, Edison, New Jersey, 08820 that has operated in New York office since March 2001, solicited RCG IT staff for employment at Netpixel.

29.     Upon information and belief, Netpixel is a direct competitor of RCG IT and professes to be "an industry leader in providing innovative and targeted staffing solutions nationwide.  [Its] core services include: Permanent, Placements, [and] Consulting Temp-to-Perm."   Netpixel professes to have offices located at in Edison, New Jersey, Omaha, Nebraska and New York, New York.

30.  Netpixel's New York offices are located at 370 Seventh Avenue, Suite #422, New York, NY 10001.

31.  Prior to Wigginton's departure to Netpixel, Netpixel, upon information and belief, had never solicited RCGIT staff.  Yet immediately after Wigginton's departure the affected staff endured approximately two weeks worth of persistent phone calls soliciting employment with Netpixel.

32.     Wigginton's direct and indirect solicitation of RCG IT staff was a direct and express violation of the Non-Solicitation clause contained in the Employment Agreement executed by the parties.   See Exhibit A, ¶ 3.

**Wigginton's Breach Of The Non-Compete Clause**

33.     On information and belief, prior to the date of his resignation, Wigginton indicated to RCGIT's Regional Manager in New York that though he hoped his base compensation would be increased he was nevertheless happy at RCGIT.  However, upon information and belief, Wigginton had already entered into employment negotiations with Netpixel and had already accepted a position with NetPixel, a New York-based direct competitor of RCG IT that is in the business of IT staffing for Citigroup, among others.

34.     Following the effective date of his resignation, Wigginton did not provide RCG IT with any assurances that he would honor his contractual and fiduciary obligations to RCG IT concerning competitive activities, and he attempted to deceive RCGIT by indicating that his new employer was not a Citigroup authorized vendor and that he was placed in an manager's position and would not be selling IT staffing and consulting services directly.

35.     On information and belief, Wigginton commenced employment with Nexpixel on or about March 30, 2005.

36.     On information and belief, both prior to and following the effective date of his resignation, Wigginton contacted Citigroup and other RCG IT customers to notify them of his resignation from RCG IT and his acceptance of employment with NetPixel and to solicit them for IT staffing service business in New York in contravention of the unambiguous express covenant not to compete contained in his Employment Contract.  Upon information and belief, as a direct result of Wigginton's improper solicitation efforts on behalf of Netpixel, the

robust level of staffing requirements that RCG IT received from Citigroup's Global Corporate Investment Banking division prior to Wiggonton's departure has dwindled to almost nothing.

**Russo's Breach of his Non-Compete Clause**

37.     On information and belief, prior to the date of his termination, Russo discussed the possibility of leaving RCGIT for Netpixel with both Wigginton and Tajuddin Haslani the Chief Executive Officer of Netpixel Inc.

38.     Following the effective date of his termination, RCG IT informed Russo of his non-compete, nondisclosure and non-solicitation obligations.

39.     On information and belief, Russo commenced employment with Nexpixel on or about April 1, 2005.

40.     On information and belief, both prior to and following the effective date of his resignation, Russo contacted several of his accounts including Lord Abbett, Lifetime Entertainment, Ogilvy & Mather and other RCG IT customers and prospects to notify them of his separation from RCG IT and his acceptance of employment with NetPixel and to solicit them for IT staffing service business in New York in contravention of the unambiguous express covenant not to compete contained in his Employment Contract.   Furthermore, Russo in a specious attempt to justify his actions, Russo intimated that he would consider his non-competition restrictions void if he did not receive a commission payment allegedly due under the terms of RCGIT's Commission Plan.

**Irreparable Injury**

41.     Upon information and belief, Wigginton and Russo have utilized RCG

IT's confidential, proprietary and trade secret information in their solicitation of, and work at, Citigroup and others, on behalf of their new employer, Netpixel.

42.     In their new employment, Wigginton and Russo have, and will, necessarily be called upon to use and disclose the confidential and proprietary information and materials they acquired at RCG IT because of their job duties and the immense value of the information they misappropriated.  Such use and disclosure are inevitable.

43.     Wigginton and Russo have breached their Agreements with, and obligations to, RCG IT by virtue of their violations set forth in this Verified Complaint.

44.     While still employed by RCG IT, and continuing thereafter, RCG IT believes that Defendants prepared to and/or did engage in and intend to engage in, *inter alia*, the following acts:

>    (a) upon information and belief, removal of RCG IT documents and/or information and conversion and/or misappropriation for personal use of confidential RCG IT information, specifically including customer names, addresses, and trade secrets and other proprietary information pertaining to RCG IT's customers;
>
>    (b) transmitting verbally and/or in writing and/or in computerized form to Netpixel client's names, addressees and other information contained in RCG IT's records and described *supra* in sub-paragraph (a);
>
>    (c) soliciting and/or preparing to solicit RCG IT's customers to terminate or downgrade and otherwise divert business to Netpixel thereby misappropriating RCG IT's business opportunities and expectancies for their own benefit; and
>
>    (d) soliciting and/or attempting to solicit RCG IT staff.

45.     Upon information and belief, Wigginton and Russo engaged in disloyal

conduct in violation of their fiduciary and agency duties by manipulating existing contracts with RCG IT customers after they tendered their resignations to RCG IT.

46.     If Wigginton and Russo are permitted, on behalf of Netpixel, to engage in the business of IT staffing services with clients for which they conducted RCG IT business, RCG IT will be irreparably damaged by the loss of customers who follow Wigginton and Russo (at their insistence) to that competitor before RCG IT has had the opportunity to effectively introduce those customers to other RCG IT representatives and establish new sales relationships free from the pains of Wigginton, Russo, and Netpixel's improper poaching.

47.     If Wigginton and Russo are permitted to engage in such improper competitive machinations, RCG IT's confidential, proprietary and trade secret information will be compromised and Wigginton and Russo will be able to exploit those confidences (including, most notably, information about the transactions in which RCG IT clients are engaged or are considering engaging) for the benefit of themselves and their new employer.   Furthermore, it is likely that Wigginton and Russo will use their knowledge of RCG IT's confidential and proprietary information to submit proposals to RCG IT clients that mirror those of RCG IT, and are made with knowledge of RCG IT's prices and quotes.  Because of the confidential information to which they have been privy, Defendants will be able to undercut RCG IT's proposals.

48.     RCG IT has no adequate remedy at law. It is impossible to predict RCG IT's ability to retain the accounts serviced by Wigginton and Russo if they are permitted to engage in unfettered solicitation of them on behalf of NetPixel

over the next six to twelve months. The success of Wigginton and Russo's unrestricted solicitation efforts over the next six to twelve months, by contrast, is quite simple to predict. They will succeed, in whole or in part. Thus, if these efforts are permitted for now, but ultimately condemned as a breach of contract, RCG IT's damages will not be quantifiable, or even ascertainable.

49.      No prior application has been made for any of the relief requested herein.

### FIRST CAUSE OF ACTION
### (Declaratory Judgment)

50.      RCG IT repeats and realleges each and every allegation contained  in paragraphs 1 through 49, inclusive, of this Complaint as though completely set forth herein.

51.      RCG IT and Wigginton entered into an Employment Contract as of December 5, 2003, and Russo's Employment Contract, was entered into on or about July 24, 2002.

52.      Under these Employment Contracts, Wigginton and Russo are prohibited from engaging in the competitive business of IT staffing services for RCG IT clients they serviced within a period of one year month and six months, respectively, following the termination of their employment with RCG IT. Nevertheless, they have apparently taken the position that the Unfair Competition covenant of the Employment Contract is unenforceable as a matter of law whereas RCG IT contends that it is enforceable under New York law.  Accordingly, an actual case or controversy exists with respect to this matter.

53.     Wigginton and Russo have no legal or equitable defense to enforcement of their Employment Contracts in so far as it prohibits them from servicing any RCG IT clients that they dealt with while employed by RCG IT for a period of six months (Russo) to one year (Wigginton) following their separation from RCG IT.

54.     Therefore, RCG IT is entitled to a declaration that the Employment Contract, and each of its provisions, is valid and enforceable.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

55.     RCG IT repeats and realleges each and every allegation contained in paragraphs 1 through 54, inclusive, of this Complaint as though completely set forth herein.

56.     Wigginton and Russo's agreements are valid and enforceable contracts between Wigginton and Russo and RCG IT.

57.     RCG IT has fully performed its obligations under the Wigginton and Russo Agreements.

58.     Wigginton and Russo's actions as above described, including soliciting and servicing RCG IT customers and potential customers serviced or solicited by them while employed at RCG IT, soliciting or attempting to solicit RCG IT staff, and using confidential information constitute breaches of the terms of their respective employment agreements.

59.     Wigginton and Russo refused to honor their obligations, and, by their conduct, have indicated that they have no intention of complying. Namely,

Wigginton and Russo's acceptance of employment with NetPixel and their solicitation of RCG IT clients constitutes a breach of their Employment Agreement obligations pursuant to which both of them agreed not to solicit, directly or indirectly, any clients of RCG IT with which they were conducting business while employed at RCG IT for a period of one year and six months, respectively, following their separation from RCG IT.

60.    As a proximate result of Wigginton and Russo's violations of their contractual obligations, RCG IT has been, and will continue to be, irreparably damaged and injured. RCG IT has no adequate remedy at law for Wigginton and Russo's actions since the damages RCG IT has suffered, and will continue to suffer, in connection with the divulgence of confidential information and trade secrets, by the loss of its competitive edge, customer goodwill, customers, and revenue.

61.    Wigginton and Russo will, unless restrained permanently, continue to violate RCG IT's rights, and Wigginton and Russo will continue to ignore their contractual duties to RCG IT by continuing to solicit and provide services for RCG IT customers.

62.    Accordingly, a permanent injunction restraining and enjoining Wigginton and Russo from continuing to violate the confidentiality and non-compete clauses in their employment agreements is the only remedy that will afford RCG IT meaningful immediate relief.

63.    To the extent that RCG IT can identify damages that it has suffered as a result of the loss of specific customers or revenue arising out of Wigginton's and Russo's breach of contract, RCG IT is entitled to recover those monetary damages and other relief

18

set forth herein in an amount to be determined at a later date.

### THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty and Duty of Loyalty)

64.     RCG IT repeats and realleges each and every allegation contained   in

paragraphs 1 through 63, inclusive, of this Complaint as though completely set forth

herein.

65.     By virtue of their positions at RCG IT, the confidence and trust reposed by

RCG IT in them, and the access provided to them to RCG IT's confidential, proprietary

and trade secret information, Wigginton and Russo were required to act solely in the

interest of RCG IT and to preserve and promote the business opportunities of RCG IT.

Wigginton and Russo positions of trust and confidence with RCG IT which gave rise to a

fiduciary duty and duty of utmost good faith to refrain from diverting business

opportunities away from RCGIT, and to refrain from subverting or misappropriating and

using RCG IT's confidential information, assets, business, business opportunities,

customers, trade secrets and goodwill for their own benefit.

66.     Upon information and belief, while still employed by RCG IT, Defendants

Wigginton and Russo engaged in employment discussions with Netpixel and, upon

information and belief, made preparations and took action to steal or commandeer RCG

IT's clients, including Citigroup.

67.     Wigginton's and Russo's actions in diverting RCG IT's business

opportunities to their own benefit, and soliciting RCG IT's customers and

prospects, performing work for RCG IT's customers, misappropriating RCG IT's confidential information, trade secrets and goodwill for their own benefit, and manipulating existing contracts with RCG IT customers for their own benefit, constitute breaches of Wigginton's and Russo's fiduciary dutie s and duties of loyalty to RCG IT.

68.     Thus, Wigginton and Russo have breached, and continue to breach, the above-described fiduciary duty owed to RCG IT and RCG IT has been and continues to be harmed by Wigginton and Russo's breaches of fiduciary duty.

69.     Wigginton and Russo have acted, and continue to act, willfully and wantonly with respect to the above-described breaches of fiduciary duty.

70.     RCG IT has been damaged as a result of Wigginton and Russo's misconduct, including contacting RCG IT customers following their departure, and, upon information and belief, submitting proposals for new business based entirely on prior proposals made by RCG IT, as well as causing the loss of RCG IT's competitive edge, customer goodwill, and fair competition.

71.     RCG IT's damages include, but are not limited to, the amount of all profits Wigginton and Russo and their employer, Netpixel, wrongfully obtained and all revenue lost by RCG IT as a result of Wigginton and Russo's breaches of fiduciary duty.

72.     Wigginton and Russo's continued use and disclosure of RCG IT's proprietary information and stealing of RCG IT's opportunities are inevitable given Wigginton and Russo's current employment.

73.     In addition to the above-referenced damages, RCG IT has no adequate remedy at law for the majority of its damages since the damages RCG IT has suffered,

and will continue to suffer, in connection with the divulgence of confidential information and trade secrets, by the loss of its competitive edge, customer goodwill, customers, and revenue are not easily quantifiable.

74.     Accordingly, a permanent injunction restraining and enjoining Wigginton and Russo from continuing this action is the only remedy that will afford RCG IT meaningful relief.

## FOURTH CAUSE OF ACTION
### (Misappropriation of Trade Secrets and Confidential Information)

75.     RCG IT repeats and realleges each and every allegation contained  in paragraphs 1 through 74, inclusive, of this Complaint as though completely set forth herein.

76.     As a result of their past employment relationship with RCG IT, Wigginton and Russo had access to and obtained RCG IT's valuable confidential, proprietary and trade secret information that is entitled to protection under the common law of New York, including, but not limited to (a) the transactions in which RCG IT's clients are engaged or are considering engaging; (b) RCG IT's services and its pricing of those services; (c) the individual staffing services purchased by or for RCG IT's clients, including Citigroup; (d) upon information and belief, the identity of third-party contractors from which RCG IT obtains resources for its clients, and the terms and conditions on which RCG IT transacts business with those suppliers; (e) the types of solutions services RCG IT provides and RCG IT's internal corporate policies related to those services; (f) the individual specifications or characteristics of the solutions or staffing services ordered by RCG IT's clients; (g) RCG IT's business, marketing and pricing

strategies; (h) the names and telephone numbers of existing, new or potential

RCG IT clients; and (i) information concerning RCG IT's financial condition and

performance and the compensation paid to its employees and third-party

contractors.

77.    This information is closely held by RCG IT, is not publicly

available to or capable of being acquired or duplicated by persons outside of RCG

IT and would be invaluable to those in competition with RCG IT.

78.    Wigginton and Russo owe RCG IT a common law and contractual duty

not to use or disclose this confidential and proprietary information acquired in the course

and scope of their RCG IT employment and which was only disclosed with the tacit

representation and agreement that such information would not be disclosed unless written

permission of RCG IT was first obtained.

79.    Netpixel knew or should have known that Wigginton and Russo obtained

confidential and proprietary information at RCG IT and by hiring Wigginton and Russo

in identical positions, are using to its benefit RCG IT's confidential and proprietary

information and trade secrets.

80.    Wigginton and Russo's possession and disclosure of RCG IT's customer

lists and pricing information have resulted in an inequity. Defendants are benefiting

unjustly from the goodwill earned by RCG IT. The Defendants have been further unjustly

enriched by using the names and contacts and clients developed by RCG IT which has

allowed them to step into the shoes of RCG IT, without having to spend the time, money

and work performed by RCG IT to develop the property and relationships at issue.

81.    RCG IT has no adequate remedy at law for Wigginton and Russo's actions

since the damages RCG IT has suffered, and will continue to suffer, in connection with the divulgence of confidential information and trade secrets, by the loss of its competitive edge, customer goodwill, customers, and revenue which are not easily quantifiable.

82.     Defendants' unauthorized use and continued misappropriation of Plaintiffs trade secrets and other proprietary confidential information has caused and continues to cause irreparable injury and damages to RCG IT.

83.     Wigginton and Russo have acted, and continue to act, willfully and wantonly with respect to the above-described misappropriations of trade secrets.

84.     The damages to Plaintiff resulting from Defendants' misappropriation of its trade secrets and other proprietary confidential information will be difficult to quantify, and include, at a minimum, (i) the competitive advantages wrongfully imparted to Netpixel; (ii) future lost sales and/or business opportunities; (iii) future lost profits; and (iv) loss or reputation, goodwill, and customer relationships.

### FIFTH CAUSE OF ACTION
**(Tortious Interference with Business Relationships and Expectancies)**

85.     RCG IT repeats and realleges each and every allegation contained   in paragraphs 1 through 84, inclusive, of this Complaint as though completely set forth herein.

86.     RCG IT possesses, or possessed, a valid contractual relationship and/or business expectancy with its customers, including, but not limited to, Citigroup. Lord Abbett and Lifetime.

87.     Wigginton and Russo, and through them Netpixel, knew of RCG IT's business relationships and expectancy with Citigroup, Lord Abbett and Lifetime, as well as other customers and prospects, including Ogilvy & Mather.

88.     Wigginton and Russo intentionally interfered with RCG IT's business relationships and expectancies with its customers and prospects, including, but not limited to, the Citigroup, Lifetime and Lord Abbett, by improperly inducing those customers and prospects to limit or terminate the relationships and/or expectancies with RCG IT and by obtaining work or attempting to obtain work from these RCG IT customers and prospects for the benefit of Netpixel.

89.     Wigginton's, Russo's, and Netpixels's actions were improper and unjustified in law because, *inter alia*, they were continuing a course of conduct set in motion while still employed by RCG IT, in breach of their fiduciary duties; their actions constitute a breach of their Employment Agreements; and they were using confidential information, trade secrets, and proprietary documents of RCG IT which they wrongfully misappropriated to further their tortious conduct.

90.     Wigginton and Russo's improper and unjustified interference has resulted in, and if unrestrained, will continue to result in, injury to RCG IT in the form of lost customers and revenue and other damages.

91.     RCG IT has no adequate remedy at law for Wigginton and Russo's actions since the damages RCG IT has suffered, and will continue to suffer, in connection with the divulgence of confidential information and trade secrets, by the loss of its competitive edge, placements and employees, customer goodwill, customers, and revenue and other immeasurable and irreparable injuries caused by Defendants' tortious interference.

92.     By employing them to service and solicit RCG IT customers and prospective customers in violation of their Employment Agreements of which it is or

should have been aware, Netpixel,  a non-party, has aided in the unlawful interference with the employment agreements between Wigginton and Russo and RCG IT.

## SIXTH CAUSE OF ACTION
### (Civil Conspiracy)

93.     RCG IT repeats and realleges each and every allegation contained  in paragraphs 1 through 92, inclusive, of this Complaint as though completely set forth herein .

94.     Defendants' actions and conduct described above were a combination of two or more persons or entities who, through concerted actions, accomplished an unlawful purpose and/or a lawful purpose through unlawful means.

95.     Defendants' actions and conduct described above amount to a civil conspiracy which has damaged RCG IT's business.

**WHEREFORE**, RCG IT respectfully requests that this Court enter an order:

a.     declaring that the Employment Agreements are valid and enforceable and that the "Non Disclosure and Nonsolicitation of Employees" and "Unfair Competition" provisions contained therein is valid and enforceable;

b.     granting a temporary restraining order and a preliminary and permanent injunction restraining and enjoining Wigginton and Russo;

i.     from directly or indirectly soliciting or servicing RCG IT customers or potential customers for a period of one (1) year with regard to Wigginton and six (6) months with regard to Russo from the date of this Court's Order;

ii.     from using or disclosing at any time in the future RCG IT's confidential business information, trade secrets, proprietary information or property;

iii.     from interfering, in any way, with any current contract, prospective client or employment relationship of RCG IT;

iv.     from breaching any fiduciary obligation, including, but not limited to, using or disclosing RCG IT's confidential and

proprietary information, appropriating any business opportunity of RCG IT, and engaging in deceptive acts or statements with regard to RCG IT's abilities, experiences, and/or personnel, to gain an unfair advantage in the critical IT staffing services industry;

c.      That this Court issue an injunction ordering Wigginton and Russo to return all RCG IT property to RCG IT, including all originals and copies of documents and computer memory containing trade secrets, proprietary, and confidential information, including, but not limited to: proposals made to customers, lists and addresses and phone numbers of all RCG IT customers in their possession, strategic pricing and business marketing plans, new business presentations and/or proposals, business processes and summaries, client lists, prospect lists, profit margins, business revenues, pricing strategies, competitive strengths and weaknesses, and employee lists, sales and marketing information, customer account records, training and operations material and memoranda, computer software and systems, personnel records, code books, financial information concerning or relating to the business, accounts and affairs of the company or its parent and subsidiaries, among other information;

e.      That the Court order an accounting of all profits and revenue that Wigginton and Russo, and all persons and entities acting in concert with them, received or derived from the business dealings (1) with individuals or entities that were customers or potential customers of RCG IT; and (2) that RCG IT be granted as additional relief money damages, including exemplary damages, lost profits, all other appropriate damages, as well as all interest, costs and disbursements in this action, including attorney fees, and such other relief as this Court may deem just

and proper in an amount to be determined at trial, but not less than $75,000; and

That RCG IT be awarded monetary relief in an amount to be fixed by the Court in

its discretion as just, including:

        i.      all profits received by Defendants from sales and revenues of

              any kind made s a result of their infringing actions, said amount to be

              trebled; and

        ii.     all damages sustained by Plaintiff as a result of Defendants'

              any acts of infringement, such damages to be trebled.

    (f)    That the Court grant RCGIT final judgment again Wigginton and

Russo for all allowable costs, attorney' fees and other litigation expenses to the

extent recoverable under applicable law, and for such other and further relief as the

Court may deem to be just and proper.

Dated: June 1, 2005
       New York, New York

                             MICHAEL NEWMAN, ESQ.
                             By:

                             _____

                             Michael Newman (MN 4124)
                             Attorney for RCG
                             Information Technology, Inc.
                             55 Broad Street, 19th Floor
                             New York, New York 10005
                             (212) 547-3118

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

RCG INFORMATION TECHNOLOGY, INC.   CASE NO.

         Plaintiffs,  **VERIFICATION**

   - against -

STEVEN WIGGINTON and VINCENT RUSSO,
         Defendants.
------------------------------------------------------------------------X


STATE OF NEW YORK  }
          }ss.:
COUNTY OF NEW YORK }

JON M. DEUTSCH, being duly sworn, deposes and says:

  1.  I am the New York Regional Manager of RCG Information Technology,
     Inc. ("RCG IT"), the plaintiff in this action, and as such I am authorized to
     make this verification.

  2.  I have read the foregoing Verified Complaint and the contents thereof; and
     the same is true of my own personal knowledge or corporate records
     regularly maintained by RCG IT in the ordinary course of its business,
     except as to those matters stated to be alleged on information and belief,
     and as to those matters, I am informed and believe them to be true.


            _____
            JON M DEUTSCH


Sworn to before me this 1st
day of June, 2005.

_____
Notary Public, State of New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

RCG INFORMATION TECHNOLOGY, INC.

                                 Plaintiffs,         CASE NO.

             - against -

                                           **RULE 7.1 STATEMENT**

STEVEN WIGGINTON and VINCENT RUSSO,

                                 Defendants.

------------------------------------------------------------------------X

**RULE 7.1 STATEMENT**

      Pursuant to Federal Rule of Civil Procedure 7.1 (formerly Local General Rule

1.9) and to enable the District Judges and Magistrate Judges of the Southern and Eastern

Districts of New York and to evaluate possible disqualification or recusal, the

undersigned counsel for RCG Information Technology, Inc. (a private non-governmental

party) certifies that the following are corporate parents, affiliates and/or subsidiaries of

said party which are publicly held:

               NONE

               RCG Information Technology, Inc. is a subsidiary of RCG International,
               which is in turn a subsidiary of Reliance Insurance.

Dated: New York, New York
       June 1, 2005

                          _____
                          Michael B. Newman, Esq. (MN 4124)
                          Attorney for RCG Information Technology, Inc.
                          55 Broad Street, 19th Floor
                          New York, New York 10004
                          (212) 547-3118

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X

RCG INFORMATION TECHNOLOGY, INC.

                                          Plaintiffs,              CASE NO.

                    - against -
                                                              **AFFIRMATION OF**
STEVEN WIGGINTON and VINCENT RUSSO,                           **SERVICE**

                                          Defendants.
--------------------------------------------------------------------------X


        MICHAEL NEWMAN, an attorney admitted to practice before the courts of this

state hereby affirms, under penalty of perjury, that on _____, 2005, I personally

served the following documents upon the defendants Steve Wigginton and Vincent

Russo:

        1.      Summons in a Civil Action
        2.      Verified Complaint - Request for Injunctive Relief
        3.      Order to Show Cause (Plaintiffs' Application For A Preliminary
                Injunction With Temporary Restraining Order)
        4.      Memorandum In Support Of Plaintiffs' Application For A Preliminary
                Injunction With Temporary Restraining Order

Dated: June 1, 2005


                            _____
                            Michael B. Newman, Esq. (MN 4124)
                            Attorney for RCG Information Technology, Inc.
                            55 Broad Street, 19th Floor
                            New York, New York 10004
                            (212) 547-3118